**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| IRIS REYES,<br>*Plaintiff*,<br>v.<br>QUALITY CARE CLEANING LLC, *et al.*,<br>*Defendants*. | Civil Action No. 25 - 2837 (LLA) |

# MEMORANDUM OPINION

Plaintiff Iris Reyes brings this action against her former employer, Defendant Quality Care Cleaning LLC, and former boss, Defendant Mirta Iris De La Rosa, for violations of the federal Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, the D.C. Minimum Wage Act ("DCMWA"), D.C. Code § 32-1001 *et seq.*, and the D.C. Wage Payment and Collection Law ("DCWPCL"), D.C. Code § 32-1301 *et seq.* ECF No. 1. Ms. Reyes now moves for default judgment under Federal Rule of Civil Procedure 55(b). ECF No. 10. For the reasons explained below, the court will grant Ms. Reyes's motion.

## I. FACTUAL BACKGROUND

For purposes of a motion for default judgment, the court accepts Ms. Reyes's well-pleaded allegations as true. *See Kwok Sze v. Johnson*, 172 F. Supp. 3d 112, 115 (D.D.C. 2016). Ms. Reyes worked as a cleaner for Quality Care Cleaning from approximately May 15, 2023 through July 16, 2025, although she took a leave of absence between November 8, 2024 and April 27, 2025. ECF No. 1 ¶¶ 9, 13. Quality Care Cleaning—which is incorporated and maintains its primary location in Maryland—is owned and operated by Ms. De La Rosa. *Id.* ¶¶ 6-7. Ms. De La Rosa hired

Ms. Reyes, scheduled and supervised her work, paid her, and eventually terminated her. *Id.* ¶¶ 28-31, 35-36. Ms. De La Rosa exercised exclusive control over the operations of Quality Care Cleaning, including its hiring and pay practices. *Id.* ¶¶ 7, 27.

Ms. Reyes generally worked in the District of Columbia, with occasional assignments in Maryland and Virginia. *Id.* ¶¶ 10-12. She typically worked five days per week, and her hours ranged from forty to sixty-five hours per week. *Id.* ¶¶ 15-16. Defendants paid Ms. Reyes a flat daily wage ranging from $125 to $135 per day, and they did not pay her overtime when her hours exceeded forty per week. *Id.* ¶¶ 17-18, 20-22. Defendants paid Ms. Reyes by check or through an online platform like Zelle, but they did not provide her with accompanying paystubs. *Id.* ¶ 19. Based on the documentation provided, Ms. Reyes worked and was paid as follows:

| **Approximate Dates** | **Daily Salary** | **Weekly Pay (5 days)** | **Weekly Hours** | **Effective Hourly Rate** |
|---|---|---|---|---|
| May 15, 2023 – Dec. 31, 2023 | $125.00 | $625.00 | 57.50 | $10.87 |
| Jan. 1, 2024 – Nov. 8, 2024 | $135.00 | $675.00 | 40.00 | $16.88 |
| Apr. 28, 2025 – Jul. 16, 2025 | $125.00 | $625.00 | 65.00 | $9.62 |

ECF No. 10-1 ¶¶ 10-12.

The District of Columbia's minimum wage was $16.10 per hour at the time Ms. Reyes began working for Defendants in May 2023 through June 30, 2023; $17.00 per hour from July 1, 2023 through June 30, 2024; $17.50 per hour from July 1, 2024 through June 30, 2025; and $17.95 per hour from July 1, 2025 until Ms. Reyes stopped working for Defendants on July 16, 2025. ECF No. 1 ¶ 24 (citing D.C. Code § 32-1003(a)).

## II. PROCEDURAL HISTORY

Ms. Reyes filed this suit in August 2025, alleging that Defendants had violated the FLSA, DCMWA, and DCWPCL. ECF No. 1. She sought $109,329.60 in unpaid wages, liquidated damages, pre- and post-judgment interest, attorney's fees and expenses, and court costs. *Id.* at 7-8.

The Clerk of Court issued summonses the same day, ECF No. 2, and Ms. Reyes effected service on both Defendants, ECF Nos. 3, 4, 11. Defendants' deadline to respond to the complaint was September 29, 2025. ECF Nos. 3, 4, 11. In November 2025, because Defendants' deadline to respond to the complaint had passed and because Ms. Reyes had not sought entry of a default, the court ordered Ms. Reyes to show cause why the case should not be dismissed for failure to prosecute under Federal Rule of Civil Procedure 41(b) and Local Civil Rule 83.23. Nov. 3, 2025 Minute Order. Ms. Reyes thereafter sought entry of a default against both Defendants, ECF Nos. 5 to 7, which the Clerk of Court entered, ECF No. 8, and the court discharged the show-cause order with instructions that Ms. Reyes seek a default judgment or other appropriate relief, Nov. 20, 2025 Minute Order. Ms. Reyes filed a motion for default judgment, ECF No. 10, which is now ripe for resolution.

## III. LEGAL STANDARD

"[T]he Federal Rules of Civil Procedure provide for default judgments . . . [to] safeguard plaintiffs 'when the adversary process has been halted because of an essentially unresponsive party,'" and to protect the "the diligent party . . . lest [she] be faced with interminable delay and continued uncertainty as to his rights." *Mwani v. bin Laden*, 417 F.3d 1, 7 (D.C. Cir. 2005) (quoting *Jackson v. Beech*, 636 F.2d 831, 836 (D.C. Cir. 1980)). A court may therefore "enter default judgment [under Federal Rule of Civil Procedure 55] when a defendant fails to defend its case appropriately or otherwise engages in dilatory tactics." *Peak v. District of Columbia*, 236 F.R.D. 13, 15 (D.D.C. 2006). Default judgment is appropriate only when the defendant is "a 'totally unresponsive' party and its default [is] plainly willful, reflected by its failure to respond to the summons and complaint, the entry of default, or the motion for default judgment." *Edwards v. Charles Schwab Corp.*, No. 19-CV-3614, 2022 WL 839636, at *1 (D.D.C. Feb. 14, 2022)

(quoting *Flynn v. JMP Restoration Corp.*, No. 10-CV-102, 2010 WL 1687950, at *1 (D.D.C. Apr. 23, 2010)).

As relevant here, a plaintiff must complete two steps to obtain a default judgment. *See* Fed. R. Civ. P. 55. First, she must ask the Clerk of Court to enter default based on a defendant's failure "to plead or otherwise defend" itself in response to the complaint. Fed. R. Civ. P. 55(a). Second, after the Clerk has entered a default, the plaintiff must file a motion for default judgment and provide notice of the same to the defaulting party. Fed. R. Civ. P. 55(b)(2). Once a plaintiff has satisfied both procedural steps, "[t]he determination of whether default judgment is appropriate is committed to the discretion of the trial court." *Int'l Painters & Allied Trades Indus. Pension Fund v. Auxier Drywall*, 531 F. Supp. 2d 56, 57 (D.D.C. 2008).

A "defaulting defendant is deemed to admit every well-pleaded allegation in the complaint." *Robinson v. Ergo Sols., LLC*, 4 F. Supp. 3d 171, 178 (D.D.C. 2014) (quoting *Int'l Painters & Allied Trades Indus. Pension Fund v. R.W. Amrine Drywall Co.*, 239 F. Supp. 2d 26, 30 (D.D.C. 2002)). However, the "defendant's default notwithstanding, the plaintiff is entitled to a default judgment only if the complaint states a claim for relief." *Denson v. DC Rest. Holdings, Inc.*, No. 19-CV-1609, 2021 WL 4988994, at *1 (D.D.C. Oct. 27, 2021) (quoting *Jackson v. Corr. Corp. of Am.*, 564 F. Supp. 2d 22, 27 (D.D.C. 2008)). Once the court has determined that the plaintiff is entitled to a default judgment, "the court is required to make an independent determination of the sum to be awarded unless the amount of damages is certain." *R.W. Amrine Drywall Co.*, 239 F. Supp. 2d at 30. "Accordingly, when moving for a default judgment, the plaintiff must prove [her] entitlement to the amount of monetary damages requested." *Herrera v. Mitch O'Hara LLC*, 257 F. Supp. 3d 37, 42-43 (D.D.C. 2017). "In ruling on [a default judgment] motion, the court may rely on detailed affidavits or documentary evidence to determine the

appropriate sum for the default judgment." *R.W. Amrine Drywall Co.*, 239 F. Supp. 2d at 30. The plaintiff "must prove [her] damages to a reasonable certainty." *Boland v. Elite Terrazzo Flooring, Inc.*, 763 F. Supp. 2d 64, 68 (D.D.C. 2011). When information concerning damages is within the defendant's care, custody, or control, the plaintiff's "estimation" will suffice if it is "both reasonable and as accurate as possible under the circumstances." *Flynn v. Extreme Granite, Inc.*, 671 F. Supp. 2d 157, 162 (D.D.C. 2009) (relying on the plaintiffs' estimations of the defendant's delinquent contributions to an employee benefit plan "[i]n light of the defendant's failure to provide periodic reports or allow the plaintiffs access to the defendant's books and records").

## IV. DISCUSSION

The court begins by assessing whether Ms. Reyes has satisfied the procedural requirements for a default judgment. It then considers whether she has stated a claim for relief under the FLSA, DCMWA, and DCWPCL, and determines the appropriate remedy.

### A. Service and Default

Default judgment can only be entered against a party that has defaulted on its obligation to respond to the complaint. *Peak*, 236 F.R.D. at 15-16. The obligation to respond is triggered by proper service of process. *See* Fed. R. Civ. P. 12(a)(1)(A). Thus, "[a] default 'cannot be entered where there was insufficient service of process.'" *Radiant Glob. Logistics, Inc. v. Am. Indep. Distillery Coop.*, No. 20-CV-3239, 2021 WL 5416633, at *3 (D.D.C. Nov. 19, 2021) (quoting *Scott v. District of Columbia*, 598 F. Supp. 2d 30, 36 (D.D.C. 2009)). Ms. Reyes has the burden of proving that service was proper. *See Mann v. Castiel*, 681 F.3d 368, 372 (D.C. Cir. 2012).

Ms. Reyes has met her burden of proving proper service. A plaintiff may serve an individual like Ms. De La Rosa by "delivering a copy of the summons and of the complaint to the

individual personally." Fed. R. Civ. P. 4(e)(2)(A). And a plaintiff may serve a corporation like Quality Care Cleaning "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process." *Id.* R. 4(h)(1)(B). According to the State of Maryland, the registered agent for Quality Care Cleaning LLC is Ms. De La Rosa, whose address is listed as 19104 Mills Choice Road #4, Montgomery Village, MD 20886. *Quality Care Cleaning LLC: W18540831*, Maryland Business Express.[1] Finally, service of process must be effected by someone "who is at least 18 years old and not a party" to the action. Fed. R. Civ. P. 4(c)(2).

On September 8, 2025, Ms. Reyes's process server personally served Ms. De La Rosa both in her individual capacity, ECF No. 4, and in her capacity as a registered agent for Quality Care Cleaning, ECF Nos. 3, 11.[2] Pursuant to Federal Rule of Civil Procedure 12(a)(1)(A), Defendants' responses to the complaint were due on September 29, 2025. *See* Sep. 9, 2025 Docket Entries. On November 6, 2025, Ms. Reyes filed affidavits of default, ECF Nos. 5 to 7, and the Clerk of Court entered defaults against both Defendants the following day, ECF No. 8. On December 30, 2025, Ms. Reyes moved for default judgment under Federal Rule of Civil Procedure 55. ECF No. 10. Neither Defendant has responded to the motion for default judgment or otherwise entered

---

[1] *Available at* https://perma.cc/59C5-FRTR. The court takes judicial notice of "information posted on official public websites of government agencies." *Arab v. Blinken*, 600 F. Supp. 3d 59, 63 n.1 (D.D.C. 2022).

[2] The original service affidavit contained a clerical error, *see* ECF No. 3, so the court directed Ms. Reyes to file a corrected affidavit, July 23, 2026 Minute Order, which she did, ECF No. 11. Under Rule 4(*l*)(3), this clerical error with respect to proof of service "does not affect the validity of service"; rather, courts "may permit proof of service to be amended." *See Mann*, 681 F. 3d at 373 (noting that "a defendant must answer the complaint 'within 21 days after being served,' even if the plaintiff fails timely to prove service by filing a server's affidavit or files defective proof of service, for the district court 'may permit proof of service to be amended'" (first quoting Fed. R. Civ. P. 12(a)(1)(A); then quoting Fed. R. Civ. P. 4(*l*)(3))).

an appearance in this case. The court thus concludes that Defendants have been "totally unresponsive" and are "willful[ly]" in default, *Edwards*, 2022 WL 839636, at *1 (internal quotation marks omitted), and it will turn to their liability under the FLSA, DCMWA, and DCWPCL.

**B. Liability**

The FLSA requires "[e]very employer [to] pay to each of [its] employees" wages no less than the federal minimum wage of $7.25 per hour, 29 U.S.C. § 206(a), and compensate employees for any hours worked in excess of forty hours per week "at a rate not less than one and one-half times the regular rate at which [the employee] is employed," *id.* § 207(a)(1). The DCMWA requires that employers in the District of Columbia pay their employees a minimum wage, which was $16.10 per hour when Ms. Reyes began working for Defendants and $17.95 by the time her employment was terminated.[3] *See* D.C. Code §§ 32-1003(a), (b); *District of Columbia Minimum Wage Poster*, D.C. Dep't of Emp. Servs.[4] The Act further requires employers to compensate any employee who works "in excess of [forty] hours at a rate not less than [one and one-half] times the regular rate at which the employee is employed." D.C. Code § 32-1003(c). Finally, the DCWCPL requires that if an employer terminates an employee, "the employer shall pay the employee's wages earned not later than the working day following such discharge." *Id.* § 32-1303(1). "Wages" under the DCWCPL include, as relevant here, minimum and overtime wages. *Id.* § 32-1301(3).

[3] The District's minimum wage applies to work done outside the District of Columbia where, as here, "[t]he employee regularly spends more than 50% of [her] working time in the District of Columbia." D.C. Code § 32-1003(b)(1); *see* ECF No. 1 ¶¶ 10-12.

[4] *Available at* https://perma.cc/6TPF-USDH.

Under the FLSA, an "employer" is "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). The term "person" includes a corporation. *Id.* § 203(a). The FLSA's definition of "employer" "is necessarily a broad one in accordance with the remedial purpose of the Act." *Morrison v. Int'l Programs Consortium, Inc.*, 253 F.3d 5, 10 (D.C. Cir. 2001) (quoting *Brock v. Superior Care, Inc.*, 840 F.2d 1054, 1058 (2d Cir. 1988)). The DCMWA's definition of "employer" is virtually identical to the FLSA's. *See* D.C. Code § 32-1002(3). The DCWPCL defines "employer" (with some additions and exceptions not relevant here) as any individual or corporation "employing any person in the District of Columbia." *Id.* § 32-1301(1B). "[C]ourts in this district have consistently concluded that determinations of employer or employee status under the FLSA apply equally under the District of Columbia wage laws." *Wright v. Off. of Wage Hour*, 301 A.3d 660, 684 (D.C. 2023) (alteration in original) (internal quotation marks omitted) (quoting *Bonilla v. Power Design Inc.*, 201 F. Supp. 3d 60, 63 (D.D.C. 2016)).

The court concludes that Ms. Reyes's well-pleaded allegations establish that Defendants were her employers and that they violated the FLSA, DCMWA, and DCWPCL. First, Defendants employed Ms. Reyes. Quality Care Cleaning was plainly "acting directly or indirectly in the interest of an employer in relation to an employee" under the FLSA, 28 U.S.C. § 203(d), and the DCMWA, D.C. Code § 32-1002(3). Additionally, during the period of Ms. Reyes's employment, Quality Care Cleaning was a corporation "employing a[] person in the District of Columbia" under the DCWPCL. D.C. Code § 32-1301(1B); *see Wright*, 301 A.3d at 684 (noting that the definition of an "employer" under the DCWCPL is coextensive with that of the FLSA); ECF No. 1 ¶¶ 10-12 (alleging that Ms. Reyes "typically and customarily worked in the District").

The court also concludes that Ms. De La Rosa was an "employer" under the FLSA, DCMWA, and DCWPCL. To determine whether an individual qualifies as an "employer" under these statutes, courts consider the four "factors [of the economic reality test] plus the [individual's] ownership interest." *Orellana v. NBSB Inc.*, 332 F. Supp. 3d 252, 263 (D.D.C. 2018) (first alteration in original); *see Steinke v. P5 Sols., Inc.*, 282 A.3d 1076, 1084-85 (D.C. 2022). The economic reality test examines "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Orellana*, 332 F. Supp. 3d at 263 (quoting *Morrison*, 253 F.3d at 11). "No single factor is dispositive," and the court "must look at the totality of the circumstances and consider any relevant evidence." *Id.*

As Ms. De La Rosa has conceded by failing to appear in this litigation, she generally hired and fired employees, including Ms. Reyes, on behalf of Quality Care Cleaning, ECF No. 1 ¶¶ 27-29; she set Ms. Reyes's work schedule and supervised her work, *id.* ¶¶ 30-31; she set Ms. Reyes's rate and manner of pay, *id.* ¶¶ 32-36; and she is an owner of Quality Care Cleaning, *id.* ¶ 7. Thus, at least three of the four factors of the economic reality test plus Ms. De La Rosa's ownership interest militate in favor of the conclusion that Ms. De La Rosa was an employer under the FLSA, DCMWA, and DCWPCL. *See Saravia v. Yuan Profit, Inc.*, No. 20-CV-232, 2023 WL 2585675, at *4 (D.D.C. Mar. 17, 2023) (concluding that an individual was an employer under the FLSA, DCMWA, and DCWPCL based on similar conceded allegations); *Herrera*, 257 F. Supp. 3d at 44 (similar).

Second, Ms. Reyes's well-pleaded allegations establish that Quality Care Cleaning and Ms. De La Rosa are liable for violations of the FLSA, DCMWA, and DCWPCL. Ms. Reyes has

plausibly alleged that Defendants committed wage-law violations by failing to pay her at the relevant minimum wage rate, ECF No. 1 ¶¶ 43-55; failing to pay her at least one and one-half times her regular hourly rate for overtime work, *id.*; and failing to timely pay her upon termination, *id.* ¶¶ 56-61. These allegations sufficiently state claims under the FLSA, DCMWA, and DCWPCL. Accordingly, the court concludes that Quality Care Cleaning and Ms. De La Rosa are jointly and severally liable for violations of the FLSA, DCMWA, and DCWPCL.

**C. Damages**

As explained, the court must make an independent determination of damages based on affidavits and other supporting documentation supplied by Ms. Reyes. *See R.W. Amrine Drywall Co.*, 239 F. Supp. 2d at 30. "[B]ecause the employer is responsible for maintaining [wage and hour] records, courts are reluctant to penalize plaintiffs without documentation in cases where the employers have defaulted." *Reyes v. Kimuell*, 270 F. Supp. 3d 30, 34-35 (D.D.C. 2017) (collecting cases). Ms. Reyes states that "no records exist of the precise hours [she worked] and amount [she was] paid" during her employment. ECF No. 10, at 4. In lieu of those records, Ms. Reyes has provided a declaration substantiating the factual allegations in her complaint. ECF No. 10-1. The court will accept Ms. Reyes's declaration, "submitted under the penalty of perjury, as to the hours she worked and wages she received," as Defendants have failed to provide timesheets and otherwise respond to her complaint. *Sanchez v. Devashish Hosp., LLC*, 322 F.R.D. 32, 36 (D.D.C. 2017) (internal quotation marks and citation omitted); *see Arias v. U.S. Serv. Indus., Inc.*, 80 F.3d 509, 512 (D.C. Cir. 1995) ("The employer cannot be heard to complain that the damages lack the exactness and precision of measurement that would be possible had [it] kept records in accordance with the requirements of . . . the [FLSA]." (alterations in original) (quoting *Anderson*

*v. Mt. Clemens Pottery Co*., 328 U.S. 680, 688 (1946))). The court proceeds to calculate damages based on the facts provided in Ms. Reyes's declaration.

**1. Unpaid wages and liquidated damages**

Under federal law, an employer who violates Section 206 or 207 of the FLSA "shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, . . . and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). The DCMWA and DCWPCL significantly overlap with the FLSA but additionally provide for liquidated damages "equal to treble the amount of unpaid wages." D.C. Code §§ 32-1012(b)(1), 32-1308(a)(1)(A)(ii). Because the District's law for liquidated damages is "more generous to employees," the court will "assess damages under [the District's] law and will not award a duplicative amount pursuant to federal law." *Herrera*, 257 F. Supp. 3d at 44; *see* 29 C.F.R. § 778.5 (directing that the higher rate applies).

Ms. Reyes worked for Defendants from May 15, 2023 through July 16, 2025, excluding a leave of absence between November 8, 2024 and April 27, 2025. ECF No. 10-1 ¶ 3. During her employment, Ms. Reyes customarily worked between forty and sixty-five hours per week. *Id.* ¶ 7. Defendants paid Ms. Reyes at a flat daily rate. *Id.* ¶ 9. This rate stayed the same regardless of whether her work exceeded forty hours per week, *id.* ¶ 13, and it consistently remained below the District of Columbia's minimum wage, *see* ECF No. 1 ¶ 24; ECF No. 10-1 ¶¶ 10-12; *supra* page 2. Ms. Reyes's supporting documentation shows that Defendants underpaid Ms. Reyes by $441.63 per week for the week beginning May 15, 2023 through the week beginning June 26, 2023, when she was working 57.5 hours per week. ECF No. 10-2, at 1. After the District's minimum wage increased to $17.00 in July 2023, Defendants underpaid Ms. Reyes by $501.25 per week from the week beginning July 3, 2023 through the week beginning December 25, 2023, when she was still

working 57.5 hours per week. *Id.* When Ms. Reyes stopped working overtime between the week beginning January 1, 2024 and the week beginning June 24, 2024, Defendants were still underpaying her by $5.00 per week even after increasing her daily wage to $135. *Id.* at 1-2. After the District's minimum wage rate increased to $17.50 in July 2024, Defendants were underpaying Ms. Reyes by $25.00 per week between the week beginning July 1, 2024 and the week beginning October 28, 2024, and by $20.00 for the week of November 4, 2024. *Id.* at 2. Ms. Reyes then took a leave of absence from November 8, 2024 through April 27, 2025. *Id.* at 2-3. When Ms. Reyes returned to work on April 28, 2025, Defendants lowered her daily wage back to $125.00, even though she was working sixty-five hours per week, resulting in an underpayment of $731.25 per week from the week beginning April 28, 2025 through the week beginning June 23, 2025. *Id.* at 3. And after the District's minimum wage increased to $17.95 in July 2025, Defendants underpaid Ms. Reyes by $766.13 per week for the weeks of June 30, 2025[5] and July 7, 2025, and by $216.70 for the final days she worked before her termination on July 16, 2025. *Id.*

The court proceeds to calculate the total unpaid wages and liquidated damages that Defendants owe. To account for changes to Ms. Reyes's work schedule, variations in how much Defendants paid her, and the District's minimum wage increases, the court will calculate unpaid wages across the eight periods described above. The court will then calculate liquidated damages equaling three times the amount of unpaid wages. *See* D.C. Code §§ 32-1012(b)(1), 32-1308(a)(1)(A)(ii).

---

[5] Ms. Reyes did not specify which days she worked during the week beginning June 30, 2025. Assuming she worked on June 30, the underpayment would be slightly lower for this week because her pay and overtime would be calculated for June 30 at the then-prevailing minimum wage of $17.50 per hour. But given that Ms. Reyes need only provide a reasonable "estimation" of her damages, the court need not probe this issue further. *Flynn*, 671 F. Supp. 2d at 162.

| **Table 1: Weeks of May 15, 2023 – June 26, 2023** | **Hours** | **D.C. Rate** | **Sub-Total** |
|---|---|---|---|
| Regular Hours | 40 | $16.10 | $644.00 |
| Overtime Hours | 17.5 | $24.15 | $422.63 |
| Weekly Wages Owed<br>(*Regular Hours + Overtime Hours*) | | | $1,066.63 |
| Weekly Salary Paid by Defendants | | | $625.00 |
| Weekly Unpaid Wages<br>(*Weekly Wages Owed - Weekly Salary Paid by Defendants*) | | | $441.63 |
| Number of Weeks During Period<br>(*May 15, 2023 – June 30, 2023*) | | | 7 |
| **Total Unpaid Wages (*Weekly Unpaid Wages x Number of Weeks During Period*)** | | | **$3,091.41** |

| **Table 2: Weeks of July 3, 2023 – December 25, 2023** | **Hours** | **D.C. Rate** | **Sub-Total** |
|---|---|---|---|
| Regular Hours | 40 | $17.00 | $680.00 |
| Overtime Hours | 17.5 | $25.5 | $446.25 |
| Weekly Wages Owed<br>(*Regular Hours + Overtime Hours*) | | | $1,126.25 |
| Weekly Salary Paid by Defendants | | | $625.00 |
| Weekly Unpaid Wages<br>(*Weekly Wages Owed - Weekly Salary Paid by Defendants*) | | | $501.25 |
| Number of Weeks During Period<br>(*July 3, 2023 – December 29, 2023*) | | | 26 |
| **Total Unpaid Wages (*Weekly Unpaid Wages x Number of Weeks During Period*)** | | | **$13,032.50** |

| **Table 3: Weeks of January 1, 2024 – June 24, 2024** | **Hours** | **D.C. Rate** | **Sub-Total** |
|---|---|---|---|
| Regular Hours | 40 | $17.00 | $680.00 |
| Overtime Hours | 0 | $25.5 | $0.00 |
| Weekly Wages Owed<br>(*Regular Hours + Overtime Hours*) | | | $680.00 |
| Weekly Salary Paid by Defendants | | | $675.00 |
| Weekly Unpaid Wages<br>(*Weekly Wages Owed - Weekly Salary Paid by Defendants*) | | | $5.00 |
| Number of Weeks During Period<br>(*January 1, 2024 – June 28, 2024*) | | | 26 |
| **Total Unpaid Wages (*Weekly Unpaid Wages x Number of Weeks During Period*)** | | | **$130.00** |

| **Table 4: Weeks of July 1, 2024 – October 28, 2024** | **Hours** | **Rate** | **Sub-Total** |
|---|---|---|---|
| Regular Hours | 40 | $17.50 | $700.00 |
| Overtime Hours | 0 | $26.25 | $0.00 |
| Weekly Wages Owed<br>(*Regular Hours + Overtime Hours*) | | | $700.00 |
| Weekly Salary Paid by Defendants | | | $675.00 |
| Weekly Unpaid Wages<br>(*Weekly Wages Owed - Weekly Salary Paid by Defendants*) | | | $25.00 |
| Number of Weeks During Period<br>(*July 1, 2024 – November 1, 2024*) | | | 18 |
| **Total Unpaid Wages (*Weekly Unpaid Wages x Number of Weeks During Period*)** | | | **$450.00** |

| **Table 5: November 4, 2024 – November 7, 2024** | **Hours** | **Rate** | **Sub-Total** |
|---|---|---|---|
| Regular Hours | 32 | $17.50 | $560.00 |
| Overtime Hours | 0 | $26.25 | $0.00 |
| Weekly Wages Owed<br>(*Regular Hours + Overtime Hours*) | | | $560.00 |
| Weekly Salary Paid by Defendants | | | $540.00 |
| Weekly Unpaid Wages<br>(*Weekly Wages Owed - Weekly Salary Paid by Defendants*) | | | $20.00 |
| Number of Weeks During Period<br>(*November 4, 2024 – November 7, 2024*) | | | 1 |
| **Total Unpaid Wages (*Weekly Unpaid Wages x Number of Weeks During Period*)** | | | **$20.00** |

| **Table 6: Weeks of April 28, 2025 – June 23, 2025** | **Hours** | **Rate** | **Sub-Total** |
|---|---|---|---|
| Regular Hours | 40 | $17.50 | $700.00 |
| Overtime Hours | 25 | $26.25 | $656.25 |
| Weekly Wages Owed<br>(*Regular Hours + Overtime Hours*) | | | $1,356.25 |
| Weekly Salary Paid by Defendants | | | $625.00 |
| Weekly Unpaid Wages<br>(*Weekly Wages Owed - Weekly Salary Paid by Defendants*) | | | $731.25 |
| Number of Weeks During Period<br>(*April 28, 2025 – June 27, 2025*) | | | 9 |
| **Total Unpaid Wages (*Weekly Unpaid Wages x Number of Weeks During Period*)** | | | **$6,581.25** |

| **Table 7: Weeks of June 30, 2025 – July 7, 2025** | **Hours** | **Rate** | **Sub-Total** |
|---|---|---|---|
| Regular Hours | 40 | $17.95 | $718.00 |
| Overtime Hours | 25 | $26.93 | $673.25 |
| Weekly Wages Owed<br>(*Regular Hours + Overtime Hours*) | | | $1,391.25 |
| Weekly Salary Paid by Defendants | | | $625.00 |
| Weekly Unpaid Wages<br>(*Weekly Wages Owed - Weekly Salary Paid by Defendants*) | | | $766.25 |
| Number of Weeks During Period<br>(*June 30, 2025 – July 11, 2025*) | | | 2 |
| **Total Unpaid Wages (*Weekly Unpaid Wages x Number of Weeks During Period*)** | | | **$1,532.50** |

| **Table 8: July 14, 2025 – July 16, 2025** | **Hours** | **Rate** | **Sub-Total** |
|---|---|---|---|
| Regular Hours | 26 | $17.95 | $466.70 |
| Overtime Hours | 0 | $26.93 | $0.00 |
| Weekly Wages Owed<br>(*Regular Hours + Overtime Hours*) | | | $466.70 |
| Weekly Salary Paid by Defendants | | | $250.00 |
| Weekly Unpaid Wages<br>(*Weekly Wages Owed - Weekly Salary Paid by Defendants*) | | | $216.70 |
| Number of Weeks During Period<br>(*July 14, 2025 – July 16, 2025*) | | | 1 |
| **Total Unpaid Wages (*Weekly Unpaid Wages x Number of Weeks During Period*)** | | | **$216.70** |

Based on the above tables, the court concludes that Defendants failed to pay Ms. Reyes $25,054.36 of the minimum and overtime wages they owed her. *See* ECF No. 10, at 5; ECF Nos. 10-1, 10-2. In addition, the court finds that Ms. Reyes is entitled to three times that amount, or $75,163.08, in liquidated damages. *See* D.C. Code §§ 32-1012(b)(1), 32-1308(a)(1)(A)(ii). All told, the court concludes that Ms. Reyes has established total damages of $100,217.44, plus post-judgment interest.[6] *See* 28 U.S.C. § 1961.

**2. Pre- and Post-Judgment Interest**

In her complaint, Ms. Reyes also requests an award of "pre-judgment and post-judgment interest as permitted by law." ECF No. 1, at 8. "[P]re-judgment interest is not available under the FLSA because the remedies provided therein—recovery of unpaid wages and overtime plus liquidated damages—are exclusive of any other." *Serrano v. Chicken-Out Inc.*, 209 F. Supp. 3d 179, 199 (D.D.C. 2016). And "[t]he DCWPCL uses similarly restrictive language when disclosing its remedies," indicating "that the remedies provided therein are [also] exclusive." *Ventura v. Bebo Foods, Inc.*, 738 F. Supp. 2d 8, 23 (D.D.C. 2010); *see Seo v. Oh*, No. 18-CV-785, 2023 WL 3119779 (D.D.C. Apr. 27, 2023) (declining to award pre-judgment interest under the DCMWA and DCWPCL). "In contrast to pre-judgment interest, courts routinely award post-judgment interest pursuant to 28 U.S.C. § 1961 in FLSA cases, regardless of any liquidated damages award."

---

[6] The court's calculations yield a total of $25,054.36 in unpaid wages, whereas Ms. Reyes's calculations yield a total of $25,054.08, ECF No. 10, at 5. This 26¢ difference is likely attributable to a difference in rounding methodology, which does not defeat the court's conclusion that Ms. Reyes has "prove[d] [her] damages to a reasonable certainty." *Boland*, 763 F. Supp. 2d at 68.

*Serrano*, 209 F. Supp. 3d at 199.[7] The court will accordingly award only post-judgment interest at the statutory rate.

## V. CONCLUSION

For the foregoing reasons, the court will grant Ms. Reyes's Motion for Default Judgment, ECF No. 10, and will enter judgment in favor of Ms. Reyes and against Quality Care Cleaning and Ms. De La Rosa, jointly and severally, in the amount of $25,054.36 in unpaid wages and $75,163.08 in liquidated damages, for a total of $100,217.44, plus post-judgment interest according to 28 U.S.C. § 1961. A contemporaneous order will issue.

LOREN L. ALIKHAN
United States District Judge

Date: November 10, 2026

[7] Ms. Reyes also indicated in her complaint that she intends to petition for attorney's fees and costs, ECF No. 1, at 8, but a motion to that effect is not presently before the court. Any such motion must be filed within fourteen days after the entry of judgment. Fed. R. Civ. P. 54(d)(2)(B)(i).